Case 2:25-cv-09704-MWC-BFM    Document 59    Filed 07/02/26    Page 1 of 20    Page ID #:573

Steven W. Ritcheson (SBN 174062)
swritcheson@insightplc.com
**INSIGHT, PLC**
578 Washington Blvd. #503
Marina del Rey, California 90292
Telephone: (424) 289-9191
Facsimile: (818) 337-0383

Jack Shaw (SBN 309382)
jshaw@cjsjlaw.com
Alejandro D. Echeverria (SBN 355375)
aecheverria@CJSJLAW.com
Brett Mangrum (*pro hac vice*)
bmangrum@cjsjlaw.com
Mark D. Siegmund (*pro hac vice*)
msiegmund@cjsjlaw.com
William D. Ellerman (*pro hac vice*)
wellerman@cjsjlaw.com
Ari Rafilson (*pro hac vice*)
arafilson@cjsjlaw.com
**CHERRY JOHNSON
SIEGMUND JAMES PC**
8140 Walnut Hill Lane, Suite 105
Dallas, TX 75231
Telephone: (254) 732-2242

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PACEM IP HOLDINGS LLC, a Texas limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SUNCO LIGHTING, INC.,<br><br>Defendant. | **Case No. 2:25-cv-09704-MWC-BFM**<br><br>**Honorable Michelle Williams Court**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO BIFURCATE AND STAY DISCOVERY**<br><br>**JURY TRIAL DEMANDED**<br><br>Hearing Date: July 24, 2026<br>Time: 1:30 PM<br>Place: Courtroom 6A<br>Action Filed: October 10, 2025 |

i

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................1

II.    RELEVANT BACKGROUND ...........................................................2

III.   LEGAL STANDARD...........................................................................3

IV.    ARGUMENT .......................................................................................4

  A. Sunco Has Not Met Its Burden Under Rule 42(b)............................4

  B. Bifurcation Would Waste, Not Conserve, Judicial and Party
     Resources ........................................................................................6

  C. Liability, Damages, and Willfulness Are Not Clearly Separable....10

V.     CONCLUSION..................................................................................16

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:25-CV-09704-MWC-BFM

## TABLE OF AUTHORITIES

**Cases**

*Fuji Mach. Mfg. Co. v. Hover-Davis, Inc.*,
  982 F. Supp. 923 (W.D.N.Y. 1997) ....................................................................16

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970).....................................................................11

*Hangarter v. Provident Life & Acc. Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004).....................................................................1, 4, 13

*Hewlett-Packard Co. v. Genrad, Inc.*,
  882 F. Supp. 1141, 1158 (D. Mass. 1995) ..........................................................10

*Hirst v. Gertzen*, 676 F.2d 1252 (9th Cir. 1982) ......................................................3

*Information Int'l v. Compugraphic Corp.*,
  1984 U.S. Dist. LEXIS 24845 (C.D. Cal. Aug. 15, 1984)........................4, 8, 10, 12

*Intex Rec. Corp. v. Hasbro, Inc.*, 3 F. Supp. 2d 1102 (C.D. Cal. 1998)...................9, 13

*Johns Hopkins Univ. v. CellPro*, 160 F.R.D. 30 (D. Del. 1995) ........................4, 10, 12

*Lam Research Corp. v. Schunk Semiconductor*,
  65 F. Supp. 3d 863 (N.D. Cal. 2014) .......................................................1, 8, 12, 15

*Medtronic Minimed Inc. v. Animas Corp.*,
  No. CV:-12-04471-RSWL-RZX, 2013 WL 3233341 (C.D. Cal. June 25, 2013) ......3

*Spectra-Physics Lasers, Inc. v. Uniphase Corp.*,
  144 F.R.D. 99 (N.D. Cal. 1992) ........................................................................1, 3

*Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080 (9th Cir. 2002) .....................................3

**Statutes**

35 U.S.C. § 271(b) ....................................................................................................11

35 U.S.C. § 287.........................................................................................................11

**Rules**

Fed. R. Civ. P. 42(b) ........................................................................................2, 3, 4, 5

iii

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:25-CV-09704-MWC-BFM

Plaintiff Pacem IP Holdings LLC ("Pacem" or "Plaintiff") respectfully submits this Opposition to Defendant Sunco Lighting, Inc.'s ("Sunco" or "Defendant") Motion to Bifurcate and Stay Discovery (Dkt. 52; "Motion" or "Mot."). Sunco asks this Court to split this patent infringement action into separate liability and damages/willfulness phases, stay all damages- and willfulness-related discovery unless and until liability is resolved against it, and maintain that stay through any Federal Circuit appeal. Dkt. 52-1 at 16. Sunco's Motion rests on the premise that the case is too complex for a single trial. That premise is wrong: the asserted claims share a common structural vocabulary, the same accused products are at issue under every patent, and the differences among accused products are slight. Having two trials would constitute a gross waste of both the parties' and this busy Court's resources. For the reasons below, Plaintiff respectfully requests that the Court deny Sunco's Motion.

## I.   <u>INTRODUCTION</u>

Bifurcation is the exception, not the rule. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004). The party seeking bifurcation bears the burden of demonstrating that separate trials will actually promote convenience, avoid prejudice, or materially advance the efficient resolution of the litigation. Generalized assertions that patent cases are "complex" are insufficient. *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992); *see also Lam Research Corp. v. Schunk Semiconductor*, 65 F. Supp. 3d 863, 866 (N.D. Cal. 2014) ("[B]ifurcation in patent cases remains the exception rather than the rule.").

Sunco has not met its burden. Rather than identifying any case-specific reason why this action cannot be tried efficiently before a single jury, Sunco relies primarily on the number of asserted patents, claims, and accused products. Those numbers, however, do not reflect how this case will actually be tried. The asserted patents concern overlapping LED lamp technologies, the same accused product categories

1

are asserted across all five patents, and Pacem's infringement contentions rely on representative products because the accused products contain the same or substantially similar accused features. The liability presentation therefore turns on a common body of technical evidence, not dozens of unrelated technologies or product-specific mini-trials.

More importantly, bifurcation would not simplify this litigation—it would require the parties and the Court to do much of the work twice. The technical, commercial, and licensing evidence relevant to infringement substantially overlaps with the evidence relevant to damages and willfulness. A discovery stay would invite disputes over the scope of "liability" versus "damages" discovery, require serial document production and depositions, and ultimately necessitate two rounds of experts, pretrial proceedings, jury presentations, and potentially two appeals. Those are certain costs undertaken merely for the speculative possibility that Sunco might prevail on every liability issue.

Rule 42(b) does not favor such speculation. Because Sunco has failed to demonstrate that bifurcation would actually promote efficiency, convenience, or fairness, its motion should be denied.

## II.   RELEVANT BACKGROUND

Pacem alleges that Sunco's LED lighting products infringe U.S. Patent Nos. RE48,489; 8,591,062; 8,684,559; 8,752,983; and 9,410,687. On June 5, 2026, Pacem served its Disclosure of Asserted Claims and Infringement Contentions, identifying forty-five asserted claims and approximately thirty Sunco products. Dkt. 52-1 at 2–3. The infringement contentions include claim charts clearly pointing to the same or substantially similar features shared in common among the accused products, thereby substantially narrowing the issues presented for trial.

This case is at an early stage. The parties have exchanged limited written discovery. Defendant has produced a mere 57 documents. Dkt. 52-1 at 2. Defendant

2

has not yet served its invalidity contentions. Claim construction is scheduled for December 11, 2026. Fact discovery closes January 8, 2027, expert discovery closes February 12, 2027, dispositive motions are heard by April 2, 2027, and the Final Pretrial Conference is set for June 25, 2027. *Id.* at 6–7.

On June 3, 2026, the parties met and conferred pursuant to Local Rule 7-3 regarding Sunco's anticipated motion. Dkt. 52-3 ¶ 2. Pacem explained that liability, damages, and willfulness involve overlapping evidence and that bifurcation would increase rather than reduce the burden on the parties and the Court. *Id.* Sunco nevertheless filed the present motion on June 19, 2026.

## III.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues." Fed. R. Civ. P. 42(b). In exercising its discretion, the Court must also preserve the parties' Seventh Amendment right to a jury trial. *Id*.

The decision whether to bifurcate rests within the Court's sound discretion and must be made on a case-by-case basis. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002). The party seeking bifurcation bears the burden of proving that it is warranted under the particular facts of the case. *Spectra-Physics Lasers*, 144 F.R.D. 99 at 101.

In determining whether bifurcation is appropriate, courts consider whether the issues are clearly separable, whether bifurcation would promote efficient judicial administration and convenience, whether it would simplify discovery or conserve resources, and whether it would reduce the risk of juror confusion. *Medtronic Minimed Inc. v. Animas Corp.,* No. CV:-12-04471-RSWL-RZX, 2013 WL 3233341, at *1 (C.D. Cal. June 25, 2013); *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982).

Bifurcation is the exception rather than the rule. Rule 42(b) "allows, but does not require, bifurcation to further convenience or to avoid prejudice." *Hangarter*, 373

3

F.3d at 1021. Courts are "inclined to find it generally more efficient to work toward one trial and one appeal." *Johns Hopkins Univ. v. CellPro*, 160 F.R.D. 30, 35 (D. Del. 1995); *Information Int'l v. Compugraphic Corp.*, 1984 U.S. Dist. LEXIS 24845, at *1–2 (C.D. Cal. Aug. 15, 1984) (denying bifurcation where "[t]he general proposition that separation of the issues of liability and damages in patent infringement cases is always warranted because those issues are always complex is not persuasive").

A mere possibility that the defendant might prevail on liability—thereby rendering damages moot—does not satisfy this standard. Otherwise, bifurcation would be appropriate in every case in which a defense is asserted, a result wholly incompatible with the rule that exceptional nature of bifurcation. *Hangarter*, 373 F.3d at 1021; *see also Information Int'l*, 1984 U.S. Dist. LEXIS 24845, at *1–2.

## IV.    ARGUMENT

### A. Sunco Has Not Met Its Burden Under Rule 42(b)

Sunco's entire theory rests on the hope that it will prevail on every liability issue and thereby render damages discovery unnecessary. But this speculative contingency does not satisfy Rule 42(b)'s requirements. A defendant's optimism about the outcome of liability is not a recognized basis for bifurcation. *See Johns Hopkins*, 160 F.R.D. at 35 (denying motion to bifurcate where defendant "has not shown that the relative benefits in savings of time and expense in staying discovery on damages and ordering separate trials outweigh the advantages of presenting these issues promptly for resolution at one trial"); *accord Information Int'l*, 1984 U.S. Dist. LEXIS 24845, at *1–2 (C.D. Cal.) (same). Sunco must demonstrate actual, concrete benefits to bifurcation that outweigh its costs. It has not done so.

Sunco's assertion that this case is too "complex" for a single trial rests largely on the number of asserted patents, claims, and accused products. Dkt. 52-1 at 2–5. But those numbers materially overstate what the jury will actually be asked to decide. Although Sunco characterizes the asserted patents as spanning "a wide range of LED-

4

related technologies," *id*. at 3, the asserted claims instead share a common structural vocabulary and recurring claim elements. Four of the five patents—the '489, '983, '062, and '687 patents—claim variations of the same basic LED lamp architecture, including an optically transmissive enclosure, a base providing an electrical connection, an LED array or assembly disposed within the enclosure, and a heat sink thermally coupled to the LED array. The '489 and '983 patents share a common specification, as do the '062 and '687 patents. The '559 patent presents an additional spectral-filtering issue that can readily be addressed alongside the overlapping technical evidence. Thus, the jury will not be required to learn five unrelated technologies. Instead, the asserted patents present substantial overlap in the technical evidence, together with one additional spectral-filtering issue unique to the '559 patent.

The accused products likewise substantially overlap. The same representative product categories are accused under all five patents, and Pacem's infringement contentions rely on representative products because the accused products contain the same or substantially similar accused features. The same annotated photographs and the same physical structures are repeatedly used to demonstrate infringement across the asserted patents. Once the jury understands the construction of Sunco's filament-style and corn-cob-style LED products, it can apply the asserted claim limitations across the accused product categories without repeatedly learning new technologies or new product designs.

That overlap extends beyond liability. Because the same accused products underlie all asserted patents, much of the evidence relevant to damages—including sales data, revenues, pricing, costs, profits, and licensing evidence—will likewise be presented only once. Rather than simplifying the case, bifurcation would simply require a second jury to be educated on the same products, technology, and commercial evidence already presented during the liability phase. Rule 42(b) requires

5

considerably more than pointing to the number of patents, claims, or products. Sunco must demonstrate that these particular issues cannot efficiently be tried together. It has made no such showing.

Moreover, this case is still at its earliest stages. The parties have not completed claim construction, and Sunco has not served invalidity contentions. The scope of trial will narrow substantially through the ordinary course of litigation: claim construction may resolve claim terms in ways that simplify or consolidate infringement theories; summary judgment may dispose of entire claims or products; and pretrial rulings will shape the trial presentation. For Sunco to assert now—before claim construction, before service of invalidity contentions, and before any narrowing whatsoever—that the case is too complex for a single trial is premature and speculative.

### B. Bifurcation Would Waste, Not Conserve, Judicial and Party Resources

Sunco's motion is styled as an efficiency measure. In reality, it would create a two-trial, serial-discovery regime that multiplies rather than reduces litigation burdens for the parties and this busy Court. That is not case management; it is a misuse of the parties' resources and of scarce judicial time. The speculative possibility that Sunco might prevail on every liability issue does not justify the certain duplication and delay that bifurcation would impose.

#### 1. *A Stay Would Create Duplicative Discovery, Serial Depositions, and Boundary Disputes*

Sunco asks this Court to stay all damages- and willfulness-related discovery unless and until liability is resolved. Dkt. 52-1 at 1. But the categories of information relevant to liability and to damages overlap so substantially that any stay would generate ongoing disputes over whether particular discovery falls on the "liability" side or the "damages" side of the line—disputes that would themselves consume

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:25-CV-09704-MWC-BFM

judicial resources and cause delay. Rather than reducing the Court's burden, a phased-discovery regime would create a cottage industry of discovery motions seeking to enforce the stay's boundaries.

The overlap in this case is concrete and pervasive. Technical documents bearing on how the accused products work are relevant to infringement analysis, but also to apportionment (what portion of the product practices the patented technology), to reasonable-royalty analysis (the value of the patented feature relative to the product as a whole), and to non-infringing alternatives. Because the accused products can be addressed through representative products and product groupings, the same technical record that proves infringement will also frame any damages analysis; there is no need to build a second record from scratch. Sales data and dates of first sale are relevant to direct-infringement volumes, but also to damages calculations, marking/constructive-notice analysis, laches, and commercial success as a secondary consideration of non-obviousness. Licensing information is relevant to willfulness, indirect infringement (knowledge of the patent), exhaustion defenses, comparable-license analyses under Georgia-Pacific factor 1, and established-royalty arguments. Product-cost and margin data—the very documents Sunco seeks to withhold—are relevant to lost-profits damages, but also to commercial success, reasonable-royalty analysis, and the economic feasibility of non-infringing alternatives.

The result of a discovery stay would be serial depositions: fact witnesses would be deposed once on "liability" topics and then re-opened (or re-noticed) for "damages" topics after liability is resolved. Corporate witnesses—including Sunco's own employees—would need to be prepared for deposition twice. Document productions would proceed in serial phases, with the attendant burden of two rounds of review, two rounds of privilege logging, and two rounds of production disputes. The parties would need to engage in duplicative meet-and-confer sessions, prepare duplicative discovery plans and schedules, and burden this Court with duplicative

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:25-CV-09704-MWC-BFM

discovery-related motions.

Sunco's own CEO, Sorush Tahour, demonstrates the inseparability of "liability" and "damages" evidence. His declaration discusses: (1) patent licenses held by Sunco's manufacturers (Dkt. 52-2 ¶ 2)—relevant both to exhaustion/indirect infringement and reasonable-royalty comparables; (2) dates of first sale ranging from late 2019 to late 2025 (*id.* ¶ 3)—relevant to both infringement timing and damages calculations; (3) shipping costs, tariffs, and profit margins (*id.* ¶¶ 4–5)—relevant to both commercial-success secondary considerations and lost-profits/apportionment damages; and (4) the competitive relationship between Sunco and prior patent owner Cree Lighting (*id.* ¶ 6)—relevant to willfulness, knowledge/intent for indirect infringement, licensing negotiations, and Georgia-Pacific factors. These facts cannot be neatly cabined into a later "damages-only" phase because they are equally necessary for liability determinations. *See Information Int'l*, 1984 U.S. Dist. LEXIS 24845, at *1–2 (C.D. Cal.) (denying bifurcation where reasonable-royalty evidence under 35 U.S.C. § 284 "will involve similar evidentiary facts as will be involved in the determination of infringement and validity"); *Lam Research*, 65 F. Supp. 3d at 866 (N.D. Cal.) (denying bifurcation where liability and damages were "not wholly separate questions" due to willfulness allegations).

### 2. Separate Trials Would Duplicate Witnesses, Experts, Pretrial Practice, and Jury Proceedings

If this case proceeds to two trials, this Court and the parties will bear the full burden of duplication across every dimension of trial practice. The pretrial phase alone would double: the Court would oversee two separate rounds of motions in limine, two pretrial conferences, two sets of proposed jury instructions and verdict forms, two trial briefs, and two pretrial orders—each round requiring the Court and counsel to re-familiarize themselves with the technology, the patents, and the products from scratch. Jury selection and juror education would likewise be

duplicated in full, requiring two voir dire proceedings, two opening statements, and—critically—two technology tutorials in which the Court oversees separate jury-education sessions on the same LED lighting technology, the same patent specifications, and the same accused products.

The duplication extends to witness testimony at trial. Inventors, corporate representatives, and technical personnel would testify at both proceedings: an inventor's testimony about the patented technology's scope and advantages is relevant to infringement at the liability trial, but equally relevant to damages—including the value of the invention, apportionment, and the Georgia-Pacific factors—at the second trial. Sunco's corporate witnesses who testify about product design and manufacturing at the liability trial would need to return to testify about sales, costs, margins, and licensing at the damages trial. Expert witnesses, too, would face full duplication: separate reports, separate Daubert motions, and separate depositions for each phase. A technical expert opining on infringement will also provide opinions on claim scope relevant to apportionment and reasonable-royalty analysis, and a damages expert must understand the technology and claim scope to properly apportion value. Under Sunco's proposal, these experts would prepare separate reports for each phase, sit for separate depositions, and face separate Daubert challenges—doubling the expert-related costs for both sides and doubling the Court's management burden.

Finally, bifurcation would produce two sets of closing arguments, two jury deliberations, and potentially two appeals. Sunco explicitly seeks a stay through Federal Circuit review (Dkt. 52-1 at 14), meaning that if Pacem prevails on even a single claim against a single product at the liability trial, the parties would still face a second full trial on damages—potentially years after the first. *See Intex Rec. Corp. v. Hasbro, Inc.*, 3 F. Supp. 2d 1102 (C.D. Cal. 1998) (denying bifurcation; court refused to empanel two juries); *see also Hewlett-Packard Co. v. Genrad, Inc.*, 882 F.

9

Supp. 1141, 1158 (D. Mass. 1995) (noting that "conducting two separate trials increases the cost due to having two jury pools and two separate juries").

The speculative savings Sunco identifies—that it might prevail on all liability issues and avoid damages altogether—are entirely contingent on Sunco winning. If Pacem prevails on infringement of even one claim as to even one product, bifurcation produces additional cost, not savings. And because every accused product is at issue under all five patents, a liability verdict for Sunco on fewer than all patents would not remove any product from the damages phase—it would only reduce the number of claims supporting the royalty analysis for that product. This is a far cry from the "outsized efficiencies" Sunco claims. Dkt. 52-1 at 15. Because Pacem can rely on representative products and substantially similar accused features, the incremental burden of presenting damages in the same trial is modest compared to the burden of convening an entirely second trial. Certain duplication now cannot be justified by speculative savings that depend on Sunco's ultimate success on the merits. *See Johns Hopkins,* 160 F.R.D. at 35*; accord Information Int'l,* 1984 U.S. Dist. LEXIS 24845, at *1–2 (C.D. Cal.).

### C. Liability, Damages, and Willfulness Are Not Clearly Separable

Sunco contends that liability and damages are "clearly separable." Dkt. 52-1 at 7. They are not. The issues in this case are deeply intertwined, and the evidence required to prove one set of issues overlaps substantially with the evidence required for the other. Most fundamentally, Sunco's willfulness exposure cannot be separated from its infringement liability. Willful infringement requires proof that the infringer acted despite an objectively high likelihood of infringement, *see Halo Elecs., Inc. v. Pulse Elecs.,* Inc., 579 U.S. 93, 100 (2016), a determination that is inseparable from the infringement analysis itself because the strength of the infringement case bears directly on whether the defendant's conduct was objectively unreasonable. Evidence of Sunco's awareness of the asserted patents, its manufacturers' licenses, and Sunco's

10

failure to obtain opinions of counsel or design around are all relevant to both liability (knowledge and intent for indirect infringement) and willfulness. Splitting these issues between two trials would require the jury at the second trial to re-hear substantially the same evidence already presented at the first.

The same entanglement pervades Pacem's indirect-infringement claims. Inducement under 35 U.S.C. § 271(b) and contributory infringement under § 271(c) require proof of knowledge and specific intent—the same licensing history, notice letters, product design choices, and competitive-awareness evidence that bears on these claims also informs willfulness and damages. Any attempt to wall off "knowledge" evidence into a liability-only phase while reserving "willfulness" for a later phase would create an artificial and unworkable distinction that no set of jury instructions could meaningfully enforce.

Sunco also overstates the complexity of the damages issues in an effort to justify separation. A reasonable-royalty analysis under the *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) framework can be presented through representative products, product groupings, and focused expert testimony—the same product groupings already central to infringement because Pacem's claim charts identify representative accused instrumentalities containing the same or substantially similar infringing features. The relevant damages evidence— existing licenses (factor 1), commercial success (factor 8), the utility and advantages of the patented technology (factor 9), the nature and scope of the patented technology (factor 10), and apportionment of profit attributable to the patented features (factor 13)—does not require a second trial. It requires the jury to understand the same patents, the same accused features, and the same product families it will already learn during the liability presentation.

Additional areas of overlap confirm that the evidence is not "clearly separable." Marking and constructive notice under 35 U.S.C. § 287 limit damages to

11

post-notice infringement but require proof of the same product-identification and sales-timing facts needed for infringement analysis. Non-infringing alternatives are relevant to both lost-profits damages and the reasonable-royalty hypothetical negotiation, but establishing those alternatives requires understanding the accused technology and claim scope—which are liability issues. Convoyed sales require understanding both the scope of infringement and the sales data. Product groupings that determine which products share the same accused functionality arise in both infringement contentions and damages calculations. And because the same products are at issue under all five patents, evidence of the commercial success of a particular Sunco LED bulb is relevant both to secondary considerations of non-obviousness (a liability issue) and to Georgia-Pacific factors 8 and 11 (commercial success and extent of use). A unified trial allows the jury to hear this evidence once and apply it to both inquiries.

Because the evidence is not "clearly separable," bifurcation would not eliminate overlap; it would merely defer portions of necessary discovery and trial preparation, forcing the parties and the Court to revisit the same ground twice. *See Information Int'l*, 1984 U.S. Dist. LEXIS 24845, at *1–2 (C.D. Cal.) (denying bifurcation where "the setting of a reasonable royalty pursuant to 35 USC § 284 will involve similar evidentiary facts as will be involved in the determination of infringement and validity"); *Lam Research*, 65 F. Supp. 3d at 866 (N.D. Cal.) (declining to bifurcate where "questions of liability and damages are not wholly separate questions"); *Johns Hopkins*, 160 F.R.D. at 35.

### D. Jury Confusion Does Not Justify Bifurcation

Sunco argues that the jury will be "confused" by the "breadth and complexity" of the issues. Dkt. 52-1 at 5–7. This argument fails for multiple reasons.

First, patent juries routinely decide infringement, validity, damages, and willfulness together in a single trial—even in cases involving multiple patents,

12

claims, and products. Here, Sunco's product-count argument is especially weak because the accused products can be addressed through representative proof and substantially similar accused features. If the number of accused products alone could justify bifurcation despite that representativeness, the exception would swallow the rule, and bifurcation would be automatic in virtually every multi-product patent case—a result squarely contrary to the authorities holding that bifurcation is the exception. *Hangarter*, 373 F.3d at 1021; *Intex Rec. Corp.*, 3 F. Supp. 2d at 1102 (C.D. Cal.) (denying bifurcation in patent case).

Second, any complexity in this case will be substantially reduced through the ordinary course of litigation before trial. Claim construction will clarify disputed terms and may narrow the scope of asserted claims. Summary judgment may dispose of entire claims, patents, or products. Sunco's own invalidity contentions (not yet served) may prompt Pacem to narrow its assertions. The pretrial process—stipulations, motions in limine, and the pretrial order—will further refine and focus the trial issues. For Sunco to predict now that the ultimate trial will be unmanageably complex is speculative in the extreme, particularly when no narrowing has yet occurred.

Third, the Court has robust tools to manage trial complexity without the costs of bifurcation. These include: structured verdict forms that guide jury deliberation issue by issue; limiting instructions under Federal Rule of Evidence 105 directing the jury to consider particular evidence for particular purposes; time limits that force efficient presentations; sequenced presentation of issues within a single trial (e.g., liability evidence followed by damages evidence); tutorial sessions and agreed technology primers; and clear, well-organized expert presentations. These tools allow a single jury—already educated on the technology and the patents—to decide all issues without the waste of convening a second jury that must be educated from scratch.

13

Sunco has not identified any specific evidentiary conflict, prejudicial spillover, or confusion risk that cannot be managed through these conventional trial-management techniques. Its argument amounts to nothing more than the observation that patent cases can be complex—which describes the majority of patent litigation and does not warrant the extraordinary step of separate trials and a discovery stay. Nor has Sunco shown that damages here are unusually complex. Damages will follow from the same representative product groupings, same accused features, same sales data, and same licensing evidence that will already be developed for liability. A second jury would not simplify those issues; it would merely require the Court and the parties to teach them twice.

### E. Bifurcation and a Stay Would Prejudice Pacem and Cause Unnecessary Delay

Sunco contends that Pacem will not be "prejudiced" by bifurcation. Dkt. 52-1 at 18–19. To the contrary, Pacem will be substantially and concretely prejudiced. Sunco does not seek merely a phased trial presentation. Rather, it seeks a stay of all damages and willfulness discovery that would persist not just through the liability trial but through Federal Circuit review of any adverse liability determination. Dkt. 52-1 at 16. Given the current schedule (trial no earlier than mid-2027), a Federal Circuit appeal (typically 12–18 months), and then a second round of discovery and trial on damages, Sunco's proposal could delay final resolution of this case by three to five years beyond the current schedule. This is not efficiency, but rather strategic delay masquerading as case management.

The prejudice from such delay is concrete. A multi-year gap between liability discovery and damages discovery means that witnesses will be deposed on damages topics years after the relevant events occurred—memories will have faded, employees may have left Sunco or retired, and documents may become unavailable or lost. The passage of time prejudices the party that bears the burden of proof on

14

damages—Pacem—far more than it prejudices the party seeking delay. Meanwhile, Sunco obtains the benefit of postponing its full financial exposure and continuing to sell the accused products with impunity during the stay, while Pacem bears the full burden of proving liability without any offsetting efficiency. If Pacem prevails on liability, it must then essentially start a second lawsuit: re-open discovery, retain or supplement experts, conduct new depositions, and prepare an entirely new trial. The "savings" from the stay are Sunco's alone; the costs are borne by both parties and the Court.

A stay of damages discovery does not eliminate that discovery; it simply postpones it. Unless Sunco prevails on every liability issue for every product—an outcome it cannot guarantee—damages discovery will eventually proceed. All the work that could be done now in parallel, while witnesses are available, memories are fresh, and documents are accessible, will instead be deferred to a later date when it will be more difficult and more expensive to accomplish. Sunco's confidentiality concerns do not alter this calculus. Sunco argues that it should not be required to produce "sensitive financial information" absent a liability finding, Dkt. 52-1 at 15–16, but concerns about confidential business information are addressed by protective orders, not by bifurcation. This Court will enter a stipulated protective order governing the handling of confidential discovery material, including "Highly Confidential – Attorneys' Eyes Only" designations that restrict disclosure of sensitive financial information to outside counsel and experts. These standard mechanisms—augmented by sealing provisions, Rule 26(c) proportionality, and in camera review where necessary—fully address any legitimate confidentiality concern. A party's desire to avoid producing relevant financial and licensing documents is not cognizable "prejudice" warranting bifurcation; it is the ordinary burden of litigation. *See Lam Research*, 65 F. Supp. 3d at 866 (N.D. Cal.) (denying bifurcation and stay where liability and damages overlapped); *see also Fuji Mach. Mfg. Co. v. Hover-*

15

*Davis, Inc.*, 982 F. Supp. 923, 925 (W.D.N.Y. 1997) (bifurcation should not be ordered where it causes prejudice through unnecessary delay).

## V.     CONCLUSION

Sunco has not shown that bifurcation would conserve resources or avoid prejudice. The opposite is true. Its proposal would require duplicative discovery, duplicative experts, duplicative motion practice, duplicative jury proceedings, and potentially duplicative appeals while delaying final resolution for years. Rule 42(b) does not favor such speculation-driven case management. The Court should deny the motion.

Date:  July 2, 2026                              Respectfully submitted,

                                        */s/ Jack Shaw*
                                        Jack Shaw
                                        Alejandro D. Echeverria
                                        Brett Mangrum
                                        Mark D. Siegmund
                                        William D. Ellerman
                                        Ari Rafilson

                                        Steven W. Ritcheson
                                        **INSIGHT, PLC**
                                        *Attorneys for Plaintiff*

16

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO BIFURCATE AND STAY DISCOVERY
CASE NO. 2:25-CV-09704-MWC-BFM

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Pacem IP Holdings LLC, certifies that this brief contains 4,957 words, and 16 pages, excluding the caption, table of contents, table of authorities, signature block, and this certificate, which complies with the type-volume limitation of L.R. 11-6.1.

Date:  July 2, 2026                              Respectfully submitted,

*/s/ Jack Shaw*
Jack Shaw (CA SBN 309382)
CHERRY JOHNSON
SIEGMUND JAMES PC

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2026, I electronically filed the foregoing Notice of Appearance with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record registered to receive electronic service.

*/s/ Jack Shaw*
Jack Shaw (CA SBN 309382)
CHERRY JOHNSON
SIEGMUND JAMES PC

*Attorney for Plaintiff*

17